IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * * *

| | | |
|---|---|---|
| ALAN BLAKELY and COLELYN BLAKELY, | ) ) | Civil No.  2:06-CV-00506 BSJ |
| | ) | |
| Plaintiffs, | ) | **MEMORANDUM OPINION** |
| | ) | **& ORDER RE: RECUSAL** |
| vs. | ) | **(28 U.S.C. §§ 144, 455)** |
| | ) | |
| USAA CASUALTY INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

```
┌─────────────────────────────────────┐
│              FILED                   │
│   CLERK, U.S. DISTRICT COURT         │
│   December 10, 2012 (2:00pm)         │
│        DISTRICT OF UTAH              │
└─────────────────────────────────────┘
```

* * * * * * * * *

On November 16, 2012, this court docketed the mandate of the court of appeals in the above-entitled action.  (*See* Mandate, filed November 16, 2012 (dkt. no. 164).)  The court of appeals reversed this court's December 6, 2011 Memorandum Opinion and Order granting summary judgment against the plaintiffs Alan and Colelyn Blakely ("the Blakelys") on their claims against USAA Casualty Insurance Company ("USAA") for breach of the implied covenant of good faith and fair dealing and remanded the same for further proceedings in light of the Utah Supreme Court's recent opinion in *Jones v. Farmers Insurance Exchange*, 2012 UT 52, 286 P.3d 301, decided August 28, 2012.

Prior to this court's receipt of that mandate, the plaintiffs filed a "Motion to Have Judge Recuse Himself and Have Another Judge Assigned" pursuant to 28 U.S.C. §§ 144 and 455,[1]

---

[1](Plaintiffs' Motion to Have Judge Recuse Himself and Have Another Judge Assigned, filed November 2, 2012 (CM/ECF No. 161).)

accompanied by a memorandum,[2] a declaration signed by both plaintiffs,[3] and subsequently, a certificate of plaintiffs' counsel.[4]  Defendant's counsel filed a memorandum in response[5] and plaintiffs' counsel filed a one-paragraph reply.[6]

**Applicable Legal Standards**

**28 U.S.C. § 144 and "Personal Bias or Prejudice"**

Section 144 provides for the disqualification of a district court judge when a party to a proceeding before that judge makes the requisite showing that the judge has "a personal bias or prejudice either against him or in favor of any adverse party."[7]  "A district court judge must not

---

[2](Memorandum in Support of Plaintiffs' Motion to Have Judge Recuse Himself and Have Another Judge Assigned, filed November 2, 2012 (CM/ECF No. 162) ("Blakely Mem.").)

[3](*Id.* at Exh. A ("Blakely Decl.").)

[4](Certificate of Counsel re Motion to Recuse, filed November 6, 2012 (CM/ECF No. 163).)

[5](Opposition to Plaintiffs' Motion for Recusal, filed November 27, 2012 (CM/ECF No. 165) ("USAA Mem.").)

[6](Plaintiffs' Reply Memorandum in Support of their Motion to Recuse, filed November 28, 2012 (CM/ECF No. 166).)

[7]28 U.S.C. § 144 reads in part:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists . . . . A party may file only one such affidavit in any case. . . .

28 U.S.C.A. § 144 (2006).  The court of appeals notes that "§ 144 requires an affidavit of bias
(continued...)

proceed further when a party makes and files a *timely* and *sufficient* affidavit that the first judge has a personal bias or prejudice."  *Green v. Dorrell*, 969 F.2d 915, 919 (10th Cir. 1992) (emphasis in original).[8]  To warrant disqualification, the affidavit required under § 144 must be both timely and sufficient.[9]

### Timeliness

Section 144's "timeliness requirement has this been deemed of 'fundamental importance' and a matter of substance, not form by a majority of federal district and appeals courts,"[10] and is measured by a standard of reasonableness.[11]  In this Circuit, the movant must "file his affidavit when he first learned of facts that allegedly showed bias and prejudice."  *Green*, 969 F.2d at 919; *see Hinman v. Rogers*, 831 F.2d 937, 938 (10th Cir. 1987) ("a motion to recuse must be filed

---

[7](...continued) and prejudice, which must be timely, sufficient, made by a party, and accompanied by a certificate of good faith of counsel."  *Glass v. Pfeffer*, 849 F.2d 1261, 1267 (10th Cir. 1988).

[8]"The filing of the affidavit does not bring about the disqualification.  The trial court determines its sufficiency.  The review is, however, restricted to its legal sufficiency and does not include the truth of the allegations.  There must be facts, however, to establish personal bias."  *United States v. Ritter*, 540 F. 2d 459, 461-62 (10th Cir. 1976).

[9]The court of appeals has observed that "in practice, the procedural requirements of this statute, which are quite specific, have been strictly construed."  *United States v. Hines*, 696 F.2d 722, 728 (10th Cir. 1982) (citing *United States v. Womack*, 454 F.2d 1337 (5th Cir.1972), *cert. denied*, 414 U.S. 1025 (1973))

[10]Annotation, *Timeliness of Affidavit of Disqualification of Trial Judge Under 28 U.S.C. § 144*, 141 A.L.R. Fed. 311, 329 (1997) (footnotes omitted).

[11]Section 144 provides that the affidavit "shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time."  With the abolition of formal terms of court in 1963, "the timeliness of the affidavit must now be judged by a standard of reasonableness in light of the given facts."  *Hines*, 696 F.2d at 728.

promptly after the facts forming the basis of the disqualification become known");[12] *United States v. Gigax*, 605 F.2d 507, 511 (10th Cir. 1979) (same); *United States v. Roberts*, 947 F. Supp. 1544, 1549 (E.D. Okla. 1996) (affidavit "must be filed 'at the first opportunity after discovery of the facts tending to prove disqualification.'" (quoting *Sine v. Local No. 992 Intern. Broth. of Teamsters*, 882 F.2d 913, 915 (4th Cir.1989))).[13]   As the Fifth Circuit has observed, "The most egregious delay—the closest thing to per se untimeliness—occurs when a party already knows the facts purportedly showing an appearance of impropriety but waits until after an adverse decision has been made by the judge before raising the issue of recusal." *United States v. Vadner*, 160 F.3d 263, 264 (5th Cir. 1998).

### Sufficiency

"A party cannot subjectively state in a 28 U.S.C. § 144 affidavit that a judge is prejudiced and thereby automatically disqualify the judge."[14]   Section 144 "requires that the affidavit of bias must state the facts and reasons for the belief that bias or prejudice exists."[15]   To be entitled to

---

[12]In *Hinman*, § 144 affidavits were held to be untimely where they had been filed three to five months after the most recent relevant facts had been discovered.  *See also United States v. Sykes*, 7 F.3d 1331, 1339 (7th Cir. 1993) (ruling a §144 affidavit filed two months after the allegedly prejudicial statement was untimely); *Davis v. Cities Service Oil Co.*, 420 F.2d 1278, 1282 (10th Cir. 1970) "These plaintiffs withheld action until a month after the case was decided against them. Such an application comes too late."); *Smuck v. Hobson*, 408 F.2d 175, 183 (D.C.Cir. 1969) (en banc) (expressing "serious doubt" about the timeliness of a § 144 affidavit based on remarks the judge made "more than two weeks before" and a law review article he published "more than a year" earlier).

[13]*See also*, Annotation, 141 A.L.R. Fed. at 342-54, and cases cited therein.

[14]8 Fed. Proc., L. Ed. *Courts and Judicial System* § 20:340, at 389 (2005) (footnote omitted).

[15]*Id.* § 20:339, at 386 (footnote omitted).

-4-

recusal under § 144, the moving party must submit an affidavit showing, among other things,

*personal* bias and prejudice:

> Affidavits of disqualification [under § 144] must allege personal rather than judicial bias. They must contain more than mere conclusions. They must show facts indicating the existence of a judge's personal bias and prejudice. Motions alleging bias and prejudice on the part of a judge which establish simply that the affiant does not like a particular judge are not adequate to require disqualification.

*United States v. Bray*, 546 F.2d 851, 857 (10th Cir. 1976) (citations omitted). In order to be

sufficient, the § 144 affidavit must state facts and reasons which "'give fair support to the charge

of a bent of mind that may prevent or impede impartiality of judgment.'" *Bell v. Chandler*, 569

F.2d 556, 559 (10th Cir. 1978) (quoting *Berger v. United States*, 255 U.S. 22, 33-34 (1921)). "A

disqualification order under § 144 should be issued when 'a reasonable man would conclude on

the facts stated (in the affidavit) that the district judge had a special bias against defendant.'"

*Bell*, 569 F.2d at 559 (quoting *United States v. Thompson*, 483 F.2d 527, 528 (3d Cir. 1973)).

> To warrant recusal under § 144, the alleged bias must be both personal and *extrajudicial*:

> § 144 refers to 'personal bias or prejudice.' The complaints of the plaintiffs relate to actions and statements during the proceedings. They reflect the judge's attitude and reactions to incidents then occurring. They do not reflect any personal feeling for or against any party or any attorney. To sustain disqualification the bias and prejudice must arise from an 'extrajudicial source' and result in an opinion 'on some basis other than what the judge learned from his participation in the case.' . . . . Here the complaints all have their origin in judicial proceedings and the decision was on the record made in the judicial proceedings.

*Davis v. Cities Serv. Oil Co.*, 420 F.2d 1278, 1282 (10th Cir. 1970) (quoting *United States v.*

*Grinnell Corp.*, 384 U.S. 563, 583 (1966)) (citation omitted); *see United States v. Irwin*, 561

F.2d 198, 200 (10th Cir. 1977) ("The bias charged must be of a personal nature and must be such

as would likely result in a decision on some basis other than what the judge learned from his

participation in the case.").[16]  Adverse rulings alone are insufficient grounds for disqualification

of a judge, *Glass v. Pfeffer*, 849 F.2d 1261, 1268 (10th Cir. 1988) (citing *Bray*, 546 F.2d at 857),

"as is evidence that the judge criticized or was angry with a party."  *Lopez v. Behles (In re Am.*

*Ready Mix, Inc.)*, 14 F.3d 1497, 1501 (10th Cir. 1994).

> [O]pinions formed by the judge on the basis of facts introduced or events
> occurring in the course of the current proceedings, or of prior proceedings, do not
> constitute a basis for a bias or partiality motion unless they display a deep-seated
> favoritism or antagonism that would make fair judgment impossible.  Thus,
> judicial remarks during the course of a trial that are critical or disapproving of, or
> even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias
> or partiality challenge.  They *may* do so if they reveal an opinion that derives from
> an extrajudicial source; and they *will* do so if they reveal such a high degree of
> favoritism or antagonism as to make a fair judgment impossible.

*Liteky v. United States*, 510 U.S. 540, 555 (1994) (emphasis in original).

Moreover, under § 144 a federal judge may be disqualified only "upon a showing of

*actual* bias or prejudice."  *Varela v. Jones*, 746 F.2d 1413, 1416 (10th Cir. 1984); *see Hoffman v.*

*Caterpillar, Inc.*, 368 F.3d 709, 718 (7th Cir. 2004) ("a motion to disqualify under § 144 requires

a showing of *actual bias*.  And only personal animus or malice on the part of the judge can

establish actual bias." (emphasis in original) (citing *United States v. Balistrieri*, 779 F.2d 1191,

1201 (7th Cir. 1985))); *Henderson v. Dep't Pub. Safety and Corrs.*, 901 F.2d 1288, 1296 (5th

Cir. 1990) ("Section 144 relates only to charges of actual bias.").

To be legally sufficient under § 144, the affidavit must aver *specific* facts: "The affidavit

must state with required particularity the identifying facts of time, place, persons, occasion, and

---

[16]*See also United States v. Professional Air Traffic Controllers Organization*, 527 F.
Supp. 1344, 1357 (N.D. Ill. 1981) ("[P]ersonal bias or prejudice refers to some sort of
antagonism or animosity toward a party arising from sources or events outside the scope of a
particular proceeding.").

circumstances." *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987). "The affidavit is insufficient if it merely states conclusions, rumors, beliefs and opinions . . . ." *Glass*, 849 F.2d at 1267.[17]

The facts alleged in the § 144 affidavit must be accepted as true, *Glass*, 849 F.2d at 1267, but they are "strictly construed against the affiant and there is a substantial burden on the moving party to demonstrate that the judge is not impartial," not a burden on the judge to prove that he is impartial. *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992), *cert. denied*, 507 U.S. 1033 (1993). Whether to recuse is a decision "committed to the sound discretion of the district court," and the court of appeals will not reverse a judge's refusal to recuse absent an abuse of that discretion. *Id.*

### 28 U.S.C. § 455 & Judicial Impartiality

28 U.S.C. § 455(b)(1) echoes the § 144 recusal requirement for actual personal bias, and requires disqualification only if "actual bias or prejudice is 'proved by compelling evidence.'" *Hook v. McDade*, 89 F.3d 350, 355 (7th Cir. 1996) (quoting *United States v. Balistrieri*, 779 F.2d at 12020).[18] Section 455(a), on the other hand, is broader and requires a judge to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The court of appeals has held that "[a] judge has a continuing duty to recuse under §

---

[17]The court of appeals in *Glass* affirmed the denial of a disqualification motion where the affidavit "lacked particularity" and was "filled with conclusions, rumors and innuendo." *Glass,* 849 F.2d at 1267-68.

[18]28 U.S.C.A. § 455(b)(1) (2006) reads:

(b) He shall also disqualify himself in the following circumstances:
(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; . . .

455(a) if sufficient factual grounds exist to cause a reasonable, objective person, knowing all the relevant facts, to question the judge's impartiality." *United States v. Pearson*, 203 F.3d 1243, 1277 (10th Cir. 2000). Under § 455(a), judges should apply an objective standard in determining whether to recuse.[19] A judge contemplating recusal should not ask whether he or she believes he or she is capable of impartially presiding over the case. According to our court of appeals, under § 455(a), "[t]he test in this circuit is """whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality."""" *United States v. Cooley*, 1 F.3d 985, 992 (10th Cir. 1993) (quoting *United States v. Burger*, 964 F.2d at 1070 (quoting *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987))). Under § 455(a), "a judge has a continuing duty to recuse before, during, or, in some circumstances, after a proceeding, if the judge concludes that sufficient factual grounds exist to cause an objective observer reasonably to question the judge's impartiality." *Id.* (citing *Liljeberg*, 486 U.S. at 861, *Frates v. Weinshienk*, 882 F.2d 1502, 1505-07 (10th Cir. 1989), *cert. denied*, 494 U.S. 1004 (1990), and *United States v. Kelly*, 888

---

[19]As the court of appeals has explained:

> This subsection is part of a 1974 amendment to the statute, enacted for the purpose of clarifying and broadening the grounds for judicial disqualification. "The general language of subsection (a) was designed to promote public confidence in the integrity of the judicial process by replacing the subjective ['in the opinion of the judge'] standard with an objective test." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 858 n. 7, 108 S.Ct. 2194, 2202, n. 7, 100 L.Ed.2d 855 (1988). See S.Rep. No. 93- 419 at 1 (1973); H.R. Rep. No. 93-1453 at 1-2 (1974), U.S. Code Cong. & Admin. News 1974, p. 6351. The subsection "applies to the varied and unpredictable situations not subject to reasonable legislative definition in which judges must act to protect the very appearance of impartiality." *United States v. Gipson*, 835 F.2d 1323, 1325 (10th Cir.1988). . . .

*United States v. Cooley*, 1 F.3d 985, 992 (10th Cir. 1993). And Congress amended § 455 in 1974 "to conform with the recently adopted ABA Code of Judicial Conduct, Canon 3C (1974)." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 858 n. 7 (1988).

F.2d 732, 744 (11th Cir. 1989)).

> In applying § 455(a), the judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue.  See, e.g., *Hall v. Small Business Admin.*, 695 F.2d 175, 179 (5th Cir. 1983); Susan B. Hoekema, Comment, *Questioning the Impartiality of Judges: Disqualifying Federal District Court Judges Under 28 U.S.C. § 455(a)*, 60 Temp. L.Q. 697, 727 (1987). . . .  The standard is purely objective. The inquiry is limited to outward manifestations and reasonable inferences drawn therefrom. In applying the test, the initial inquiry is whether a reasonable factual basis exists for calling the judge's impartiality into question. . . .

*Id.* at 993 (citing *Gipson*, 835 F.2d at 1325; *Willner v. University of Kansas*, 848 F.2d 1023, 1026-27 (10th Cir. 1988); *United States v. Hines*, 696 F.2d 722, 729 (10th Cir. 1982); *In re Allied Signal, Inc.*, 891 F.2d 967, 970 (1st Cir. 1989), *cert. denied*, 495 U.S. 957 (1990)).

"If the issue of whether § 455 requires disqualification is a close one, the judge must be recused." *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 659 (10th Cir. 2002); *see Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995).  But the court of appeals has also admonished that "[t]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987).  "A judge should not recuse . . . on unsupported, irrational, or highly tenuous speculation." *Id.* [20]

---

[20]*See also Cooley*, 1 F.3d at 993-994:

> Thus, in addition to other factors, this and other courts have identified various matters arising in cases involving §§ 144, 455(a), or 455(b)(1), which will not ordinarily satisfy the requirements for disqualification under § 455(a): (1) Rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters, *United States v. Burger*, 964 F.2d at 1069; *Glass v. Pfeffer*, 849 F.2d at 1267; *Willner v. University of Kansas*, 848 F.2d at 1027; *Hinman v. Rogers*, 831 F.2d at 939-40; *United States v. Hines*, 696 F.2d at 719; (2) the mere fact that a judge has previously expressed an opinion on a point of

(continued...)

-9-

It has long been understood that "The alleged bias and prejudice to be disqualifying *must stem from an extrajudicial source* . . . other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966) (emphasis added).

In *Liteky v. United State*s, the Court applied this "extrajudicial source" doctrine under the current language of § 455(a).  Just prior to his second criminal trial, the defendant in *Liteky* moved to disqualify the judge on the ground that the judge displayed "impatience, disregard for the defense and animosity" toward the defendant during an earlier criminal trial.  He cited various comments by the judge, including admonitions of defense witnesses and counsel as well as certain trial rulings.  The Court rejected the contention that recusal was in order:

---

[20](...continued)
law, *Leaman v. Ohio Dep't of Mental Retardation*, 825 F.2d 946, 949 n. 1 (6th Cir. 1987); *United States v. Bray*, 546 F.2d 851, 857 (10th Cir. 1976), or has expressed a dedication to upholding the law or a determination to impose severe punishment within the limits of the law upon those found guilty of a particular offense, *United States v. Gigax*, 605 F.2d at 514; *United States v. Haldeman*, 559 F.2d 31, 134 n. 302 (D.C.Cir. 1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); (3) prior rulings in the proceeding, or another proceeding, solely because they were adverse, see *Glass v. Pfeffer*, 849 F.2d at 1268; *Green v. Dorrell*, 969 F.2d 915, 919 (10th Cir.1992); *Willner v. University of Kansas*, 848 F.2d at 1028; (4) mere familiarity with the defendant(s), or the type of charge, or kind of defense presented, see *Frates v. Weinshienk*, 882 F.2d at 1506; (5) baseless personal attacks on or suits against the judge by a party, *United States v. Bray*, 546 F.2d at 858;  (6) reporters' personal opinions or characterizations appearing in the media, media notoriety, and reports in the media purporting to be factual, such as quotes attributed to the judge or others, but which are in fact false or materially inaccurate or misleading;  and (7) threats or other attempts to intimidate the judge. See *United States v. Studley*, 783 F.2d 934, 940 (9th Cir. 1985); *United States v. Grismore*, 564 F.2d 929, 934 (10th Cir.1977), *cert. denied*, 435 U.S. 954, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978). Finally, we have emphasized that "[t]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is."  *Hinman*, 831 F.2d at 939.   (Footnotes omitted.)

First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . . In and of themselves (*i.e.,* apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. *Almost invariably, they are proper grounds for appeal, not for recusal*.  Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion *unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible*.

510 U.S. at 555 (emphasis added & citation omitted).

Consistent with *Litek*y, the court of appeals has rarely required judicial disqualification when the alleged partiality did not derive from an "extrajudicial source," *e.g.*, judicial comments concerning a probable outcome based upon information presented within the context of a case. For example, in *United States v. Young*, 45 F.3d 1405, 1414 (10th Cir. 1995), the Tenth Circuit upheld a refusal to recuse even though the district judge opined before trial that "the obvious thing that's going to happen . . . is that she's going to get convicted."  The court of appeals believed the district judge had simply expressed a view of what was likely to happen derived from what he had observed in the case: "Nothing in the remark indicates that the judge was unable or unwilling to carry out his responsibilities impartially." *Id.* at 1416.[21]

Under § 455(a), as the Tenth Circuit explains:

Factors that do not merit disqualification include: rumor, speculation, beliefs, conclusions, or other non-factual matters, *see, e.g.*, *United States v. Burger*, 964

---

[21]Indeed, the most common basis for recusal is when a judge learns something outside of the proceedings before the court which "'result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'"  *Lopez v. Behles (In re Am. Ready Mix, Inc.)*, 14 F.3d 1497, 1501 (10th Cir. 1994), *cert. denied*, 513 U.S. 818 (1994) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see also Liteky*, 510 U.S. at 551 (noting that extrajudicial source factor is the only common basis upon which to establish disqualifying bias).

F.2d 1065, 1070 (10th Cir. 1992); the fact that the judge has previously expressed an opinion on a point of law, *see, e.g.*, *Leaman v. Ohio Dep't of Mental Retardation & Developmental Disabilities*, 825 F.2d 946, 949 n.1 (6th Cir. 1987); and prior rulings that were adverse to the moving party in this proceeding, or in another proceeding, solely because they were adverse, *see, e.g.*, *Green v. Dorrell*, 969 F.2d 915, 919 (10th Cir. 1992).  In addition, in *Sac & Fox* we noted that there was no authority for the proposition that the "time and manner of [the judge's] ruling creates a reasonable doubt about impartiality, absent any other indicia of bias or partiality." 193 F.3d at 1168; . . . .

*Estate of Bishop v. Equinox Intern. Corp.*, 256 F.3d 1050, 1058 (10th Cir. 2001) (quoting *Sac & Fox Nation of Okla. v. Cuomo*, 193 F.3d 1162, 1168 (10th Cir. 1999)).

"A party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise."  *Pope v. Fed. Express Corp.*, 974 F.2d 982, 985 (8th Cir. 1992) (citation omitted).  Under § 455—in contrast to § 144— the movant's "factual allegations need not be taken as true, and," as explained above, "the test is whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality."  *Glass v. Pfeffer*, 849 F.2d at 1268 (internal quotation omitted).  Under § 455, the court of appeals insists that

disqualification is appropriate only where the reasonable person, *were he to know all the circumstances*, would harbor doubts about the judge's impartiality. *Nichols*, 71 F.3d at 351.  There must be a reasonable factual basis to question the judge's impartiality.  *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993). The scope of inquiry is limited to outward manifestations and reasonable inferences drawn therefrom.  *Id.*  Section 455 does not require recusal based only on assumptions about a judge's beliefs that are not substantiated by the facts of record.  See *Nichols*, 71 F.3d at 351; *Bryce v. Episcopal Church*, 289 F.3d 648, 659-60 (10th Cir. 2002).

*In re McCarthey*, 368 F.3d 1266, 1269-1270 (10th Cir. 2004) (emphasis added); *see United States v. Mendoza*, 468 F.3d 1256, 1261 (10th Cir. 2006) (same).

-12-

**The Blakelys' § 144 "Affidavit" is Untimely**

As noted above, plaintiffs filed their § 144 "affidavit" in this case on November 2, 2012. All of their allegations of bias prove to be footed upon either the contents of this court's August 7, 2009 Order[22] or this court's December 6, 2011 Memorandum Opinion & Order[23] granting summary judgment against the Blakelys on their claim for breach of the implied covenant of good faith and fair dealing.  The contents of those rulings have been known to the Blakelys and their counsel for at least three years and for nearly one year, respectively.  The Blakelys point to no facts upon which they rely in making their allegations that were not known to them at the time those rulings were made.   Neither the Blakelys nor their counsel offer any explanation for the protracted three-year and one-year delay in filing their § 144 motion with this court, and good cause for that delay does not appear upon the record in this case, particularly where two-thirds of the Blakelys' allegations of bias pertain to what was or was not included in the court's August 7, 2009 Order, more than three years ago.

In *Securities Exchange Comm'n  v. Loving Spirit Foundation Inc.*, 392 F.3d 486 (D.C. Cir. 2004), the court "found no case, nor has [affiant] cited one, permitting a delay as long as the one in this case," where the affiant had "waited two years after the first order it complains of and over six months after the last."  *Id.* at 492-93.  The same may be said of the Blakelys' allegations of bias in this case.  Thus the Blakelys' recusal papers are not timely within the meaning of 28 U.S.C. § 144.

---

[22](Order of Dismissal, filed August 7, 2009 (CM/ECF No. 113) ("Aug. 7, 2009 Order").)

[23](Memorandum Opinion & Order, filed December 6, 2011 (CM/ECF No. 153) ("Dec. 6, 2011 Mem. Op.").)

**The Blakelys' § 144 "Affidavit" is Legally Insufficient**

As outlined above, a legally sufficient § 144 affidavit must meet the following requirements: (1) the facts must be material and stated with particularity; (2) the facts must be such that if true they would convince a reasonable person that an actual bias exists; and (3) the facts must show the bias is personal, as opposed to judicial, in nature.   As explained above, § 144 affidavits are strictly construed against the affiant and the moving party has a substantial burden in establishing that a judge is not impartial.  *United States v. Burger*, 964 F.2d at 1070.

Even assuming that the Blakelys' November 2, 2012 filings were somehow timely for purposes of § 144, they do not prove to be "sufficient" within the meaning of that section.

First, the Blakelys allege *no* specific facts that, if taken as true, would establish any extrajudicial source for the court's purported bias.  Nothing in the Blakelys' papers even hints that the court has any personal antagonism towards them, or that the court learned something outside of the proceedings before the court in this case which "'result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'"  *Lopez*, 14 F.3d at 1501.

The Blakelys' allegations of bias are rooted entirely in their dissatisfaction with this court's adverse rulings and the court's recital or omission of specific facts in its own explanation of those rulings, as well as the Blakelys' imputation of negative inferences to the court that they choose to draw from the court's explanation of its rulings.

The Blakelys primarily complain that the court's August 7, 2009 Order made "many references to documents and facts that favor USAA and unfairly ignores the facts Mr. and Mrs. Blakely presented in their declaration in opposition to defendant's motion for summary judge

-14-

[sic] and in other evidence submitted by Plaintiffs."[24]  They point to eight examples of factual

references in the court's August 7, 2009 Order, complaining in each instance that the court did

not expressly reiterate the Blakelys' factual allegations and contentions as part of its

explanation.[25]  In essence, the Blakelys try to infer actual personal bias from the fact that in

---

[24](Blakely Mem. at 2.)  Throughout the Blakelys' November 2, 2012 memorandum, counsel refers to the "plaintiffs' May 2009 declarations, Doc 75, Exhs 11, 12."  In fact, the record reflects that the referenced "Affidavit of Alan Blakely" and "Affidavit of Colelyn Blakely" were each dated May 15, *2008*.

[25]The Blakelys aver that **(1)** "The Judge does not mention that (as we described in our declarations) we were forced by USAA to move back into the house which was still under construction because USAA refused to pay any more living expenses," Blakely Decl. at 1 ¶(2)(a)(1); **(2)** "The Judge leaves out the fact that (as we described in our declarations and the Tenth Circuit later acknowledged) we were pressured and felt we had little choice but to consent to USAA's 'preferred vendor' contractor," *id.* at ¶(2)(a)(2); **(3)** "the Judge fails to mention that the engineer made it clear that he was only addressing the structural issues, not cosmetic, warranty, odors or other related matters that needed to be addressed to repair and restore the house to its pre-loss condition," *id.* at 2 ¶(2)(a)(3); **(4)** "the Judge states that the repair and restoration work 'was completed by mid-November, 2002' except for some odor and cleaning issues. This again does not portray our position that (as we described in our declarations) the construction was not completed and much of the repairs remained uncompleted for years," *id.* at ¶(2)(a)(4); **(5)** "the Judge relates that we filed a civil action against the at-fault contractor which caused the fire, leaving the impression that plaintiffs were satisfied with USAA's settlement, but wanted to bring a civil claim for other damages. Again, the Judge doesn't explain that (as we described in our declarations) we filed the civil suit because USAA was refusing to properly pay our losses under the insurance policy and it appeared it would be an easier task to obtain full compensation from the at-fault contractor than it would be from USAA," *id.* at ¶(2)(a)(5); **(6)** the court "states that we 'waited until January 29, 2005' to seek the arbitration and that the 'process was from the beginning available' to us, suggesting that the delay was solely our fault without giving any explanation that (as we described in our declarations) it was USAA's recalcitrance in refusing to pay or deal with us further that made us feel a need to file the interim civil suit.  It wasn't until it appeared more difficult to get the recovery from the at-fault contractor that we concluded we should proceed with the arbitration process," *id.* at 2-3 ¶(2)(a)(6); **(7)** the court's "one-sided description" of the Blakelys' assertion of additional claims in June 2004 "makes no mention of the many efforts plaintiffs used to get USAA to consider the additional claims in 2002 shortly after the fire (as described in our declarations)," *id.* at 3 ¶(2)(a)(7); and **(8)** the court's description that USAA "'within a relatively expeditious period of time, paid living expenses, personal property claims and reconstruction bills' . . . favors only USAA and ignores

(continued...)

-15-

explaining its ruling against them, the court had not "told our side of the story," that is, the court did not adopt the Blakelys' preferred characterization of specific evidence upon which the Blakelys rely, or their preferred explanations of their mental state, *i.e.*, *why* the Blakelys did what they did in the months and years following the August 29, 2002 fire.[26]

The remainder of the Blakelys' declaration complains that following the court of appeals' reversal of this court's August 7, 2009 Order as to their "bad faith" claim, "USAA brought the motion again to have our case thrown out, which he granted and again dismissed our case on December 6, 2011," and in doing so, "[t]he Judge basically gives the same summary of the facts as we describe above as a one sided summary of uncontested facts without giving credence to the testimony in our Declarations and our evidence."[27]   Thus, the Blakelys argue that this court's memorandum opinion itself "appears to demonstrate bias against us (or in favor of USAA)."[28]

If indeed the Blakelys' alleged "facts indicating the existence of a judge's personal bias and prejudice" consist entirely of the text of this court's orders, then the text of those orders must be taken as a whole and the Blakelys' complaints about an order must be considered in context of

---

[25](...continued)
the testimony in our declarations and other evidence we presented of USAA's dilatory and unfair treatment of us and the inadequate payments," *id.* at ¶(2)(a)(8).

[26]The Blakelys also point to the court of appeals' recitation of specific factual allegations in concluding that the Blakelys' "bad faith" claim was not frivolous—allegations the Blakelys aver "Judge Jenkins seemed to ignore in his ruling."  (Blakely Decl. at 3 ¶(2)(b).)  Yet the court appeals qualified that recitation, stating that "we express no opinion on the ultimate merits of the Blakelys' claim for breach of the implied covenant of good faith and fair dealing, or whether the evidence is sufficient to withstand any other type of dispositive motion," such as summary judgment.  *Blakely v. USAA Cas. Ins. Co.*, 633 F.3d 944, 950 (10th Cir. 2011).

[27](Blakely Decl. at 4 ¶(2)(c)(2) (citing Dec. 6, 2011 Mem. Op. at 3-14).)

[28](*Id.* at ¶(2)(c).)

the entire document.   Under § 144 they must be "strictly construed against the affiant," and

"there is a substantial burden on the moving party to demonstrate that the judge is not impartial."

*United States v. Burger*, 964 F.2d at 1070.

Nothing in this court's August 7, 2009 Order or its December 6, 2011 Memorandum

Opinion & Order reflects bias and prejudice arising from an "extrajudicial source" that resulted

in an opinion "'on some basis other than what the judge learned from his participation in the

case.'"   *Davis v. Cities Serv. Oil Co.*, 420 F.2d at 1282 (quoting *United States v. Grinnell Corp.*,

384 U.S. at 583).   "Here," as in *Davis*, "the complaints all have their origin in judicial

proceedings and the decision was on the record made in the judicial proceedings."   *Id.*

That this court did not summarize the pertinent facts in the precise way that the Blakelys

would prefer does not establish actual personal animus or malice on the part of the court.   Nor

does it show that the Blakelys' various factual assertions were "overlooked" or "ignored."

Among the uncontroverted facts recounted by this court's December 6, 2011 Memorandum

Opinion & Order are these:

> 9.   By mid-November, 2002, Phipps Construction completed the work
> recommended in the Barfuss report and its repair and restoration work in the
> Blakelys' home.   At that point, still unresolved were some odor and cleaning
> issues and some personal property claims—claims which USAA submits had
> ostensibly been resolved and paid by not later than July of 2003, but which the
> Blakelys insist still remained unresolved.
>
> * * * *
>
> 11.   By July of 2003, the Blakelys were still not satisfied with the extent of
> the floor joist restoration work performed by Phipps Construction pursuant to the
> Barfuss report, and with the cleaning, repair and restoration of their home and its

contents. . . .[29]

The memorandum opinion references both the Blakelys' and USAA's statements of fact set forth

in their respective summary judgment memoranda[30] concerning the Blakelys' dissatisfaction with

the remediation work in November 2002 through July 2003—which fact statements in turn

referenced the evidentiary materials the parties relied upon under Fed. R. Civ. P. 56(c), including

the 2008 Blakely declarations.[31]   The court further noted that "USAA disputes the record basis

for the Blakelys' dissatisfaction with the remediation work as of July 2003, but does not dispute

that in July 2003, the Blakelys were in fact dissatisfied."[32]   Far from ignoring the Blakelys'

factual assertions, the memorandum opinion's footnotes catalog those materials in the record

---

[29](Dec. 6, 2011 Mem. Op. at 6-7 ¶¶ 9, 11 (footnotes omitted).) *Compare Blakely v. USAA Cas. Ins. Co.*, 633 F.3d 944, 947 (10th Cir. 2011) ("Throughout the process, however, the Blakelys were dissatisfied with the work to their home and the extent their personal property was cleaned and/or replaced.")

[30]The court's local rule DUCivR 56-1 required that the parties' Rule 56 memoranda "must begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists" or "as to which movant contends no genuine issue exists." Each fact statement "must be numbered, must refer with particularity to those portions of the record" on which the movant or the opposing party relies.  DUCivR 56-1(b), (c).  Our local rule further provided that "[a]ll material facts of record meeting the requirements of Fed. R. Civ. P. 56 that are set forth with particularity in the statement of the movant will be deemed admitted for the purpose of summary judgment, unless specifically controverted by the statement of the opposing party identifying material facts of record meeting the requirements of Fed. R. Civ. P. 56."  DUCivR 56-1(c).

[31](*See* Dec. 6, 2011 Mem. Op. at 6-7 nn.15, 17 (citing "USAA Mem. at 4-5 ¶ 8; Blakely Mem. at viii-xi ¶¶ 10-13, xx-xxi ¶ 8; USAA Reply Mem. at vii-xiv; USAA 3/28/08 Mem. at viii ¶¶ 11-12; Blakely 5/16/08 Mem. at iv-v ¶¶ 11-12").)  These and other footnote references reflect the court's review and consideration of *all* of the summary judgment materials submitted by the parties before and after the 2011 remand, including all of plaintiffs' counsel's DUCivR 56-1(c) statements of fact based upon the Blakelys' 2008 declarations.

[32](*Id.* at 7 n.17.)

-18-

with reference to each paragraph of the court's summary narrative of uncontroverted material facts.

The Blakelys' allegations of bias—grounded entirely in this court's prior judicial rulings against the Blakelys—fail to meet the standard articulated by the Supreme Court in *Liteky* and so often quoted by the Tenth Circuit: "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display *a deep-seated favoritism or antagonism that would make fair judgment impossible*."  *Liteky v. United States*, 510 U.S. at 555 (emphasis added).  From this court's prior orders, a reasonable person could not conclude "'that the district judge had a special bias against defendant,'"  *Bell*, 569 F.2d at 559 (quoting *United States v. Thompson*, 483 F.2d at 528), particularly when they are strictly construed against the affiants, as is required under § 144. *Burger*, 964 F.2d at 1070 (holding that § 144 affidavits should be strictly construed against the affiant and that movants bear a substantial burden to show actual partiality).

"The affidavit is insufficient if it merely states conclusions, rumors, beliefs and opinions,"  *Glass*, 849 F.2d at 1267, and the Blakelys' conclusions, beliefs and opinions concerning this court's prior orders cannot suffice to require recusal under 28 U.S.C. § 144.  *See Hoffman v. Caterpillar, Inc.*, 368 F.3d at 718 (explaining that "while a court must assume the truth of the factual assertions, it is not bound to accept the movant's conclusions as to the facts' significance" (citing *Balistrieri*, 779 F.2d at 1199-1200)).  The record in this case contains *no* evidence of actual personal bias, animosity or malice on the part of the court that would require recusal under § 144, and the Blakelys have proffered none.  *See id.* ("only personal animus or

malice on the part of the judge can establish actual bias" under § 144).

Finally, under the requisite strict construction of § 144's requirements,[33] the Blakelys' § 144 "affidavit" does not satisfy the statute's procedural requirements.  As explained above, § 144 requires a party seeking judicial recusal to file "a timely and sufficient *affidavit*."  Generally, an "affidavit" consists of "[a] voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths."  *Black's Law Dictionary* 66 (9th ed. Bryan A. Garner, ed. 2009).  28 U.S.C. § 1746 provides that:

> [w]herever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).
>
> (Signature)".
>
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
>
> (Signature)".

A statement or declaration that is made under penalty of perjury in compliance with 28 U.S.C. § 1746, "ha[s] the force of an affidavit or sworn declaration."  *Hall v. Furlong*, 77 F.3d 361, 363

---

[33]Section 144's "requirements are to be strictly construed to prevent abuse." *Sykes*, 7 F.3d at 1339.

(10th Cir. 1996), and would serve as an "affidavit" for purposes of 28 U.S.C. § 144.  Sworn

statements executed pursuant to State law may also serve as "affidavits" for purposes of federal

law,[34] presumably including § 144.

In this case, the October 31, 2012 "Declaration of Alan and Colelyn Blakely" was neither

"sworn to by the declarant[s] before an officer authorized to administer oaths" nor subscribed in

the fashion specified by 28 U.S.C. § 1746.  Instead, the Blakelys' declaration recites that "[w]e

declare under criminal penalty of the State of Utah that the foregoing is true and correct,"[35]

_____

[34]As the Supreme Court explained in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009):

> The documents at issue here, while denominated by Massachusetts law "certificates," are quite plainly affidavits: "declaration[s] of facts written down and sworn to by the declarant before an officer authorized to administer oaths." Black's Law Dictionary 62 (8th ed. 2004).  They are incontrovertibly a "'solemn declaration or affirmation made for the purpose of establishing or proving some fact.'"

557 U.S. at 310 (quoting *Crawford v. Washington*, 541 U.S. 36, 51 (2004) (quoting 2 N. Webster, An American Dictionary of the English Language (1828)).

[35](Blakely Decl. at 6.)  The oft-referenced May 15, 2008 declarations of Alan Blakely and Colelyn Blakely were executed in the identical fashion.  USAA moved to strike those declarations because, *inter alia*, "they do not comply with the requirements of admissibility under the Federal Rules of Civil Procedure. . . . [A]ffidavits must be signed, sworn, and notarized to be admissible and support memoranda filed pursuant to Rule 56 . . . ." (Memorandum in Support of Motion to Strike, filed June 3, 2008 (CM/ECF No. 81), at 2.)  This court did not rule on USAA's motion to strike, instead pursuing the question whether the substance of the parties' assertions of material fact were in genuine dispute, requiring a trial.  This court concluded that they were uncontroverted.  (*See* Aug. 7, 2009 Order at 1 ("the Court concludes that there exist no
(continued...)

consistent with the form prescribed by Utah Code Ann. § 78B-5-705 (2008):

> (1) If the Utah Rules of Criminal Procedure, Civil Procedure, or Evidence require or permit a written declaration upon oath, an individual may, with like force and effect, provide an unsworn written declaration, subscribed and dated under penalty of this section, in substantially the following form:
>
> "I declare (or certify, verify or state) under criminal penalty of the State of Utah that the foregoing is true and correct.
> Executed on (date).
> (Signature)".
>
> (2) A person who knowingly makes a false written statement as provided under Subsection (1) is guilty of a class B misdemeanor.

Section 78B-5-705 expressly applies to proceedings governed by the requirements of the *Utah court rules* and makes no pretense of satisfying federal statutory or procedural requirements already addressed by 28 U.S.C. § 1746.  It also imposes its own penalty separate from those prescribed under Utah law for perjury (or "falsification in official matters"), which range as high as a second-degree felony.  *See* Utah Code Ann. § 76-8-501 through 76-8-505 (2008).

Compliance with the requirements of 28 U.S.C. § 1746 was simple—the Blakelys need only subscribe to their October 31, 2012 Declaration substantially in the form prescribed by the federal statute.  They did not do so.  Thus, for purposes of 28 U.S.C. § 144 as strictly construed, the October 31, 2012 "Declaration of Alan and Colelyn Blakely" filed with this court on November 2, 2012, is not an *affidavit* at all.

---

[35](...continued)
triable issues of material fact, and that defendant is entitled to judgment as a matter of law").  After remand, the Blakelys resubmitted the same 2008 declarations as exhibits to their memorandum in opposition to USAA's motion for summary judgment (*see* Exhibits "9" & "10" to Plaintiffs' Memorandum In Opposition to USAA's Motion for Summary Judgment, filed May 16, 2011 (CM/ECF No. 147), but this time, USAA did not move to strike or otherwise object to the declarations.

**The Blakelys' Allegations Fail to Justify Recusal Under § 455**

Under § 455, a federal judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned" or "where he has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(a), (b)(1).  As explained above, § 455(b)(1) echoes § 144's requirement of a showing of actual personal bias, and requires disqualification only if "actual bias or prejudice is 'proved by compelling evidence.'" *Hook v. McDade*, 89 F.3d at 355.  In contrast to § 144, the movant's "factual allegations need not be taken as true," *Glass v. Pfeffer*, 849 F.2d at 1268; "[n]or is the judge limited to those facts presented by the challenging party." *Hinman v. Rogers*, 831 F.2d at 939 (citing *Idaho v. Freeman*, 507 F. Supp. 706 (D. Idaho 1981)).[36]

For a movant proceeding under § 455(a), "the test is whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." *Glass v. Pfeffer*, 849 F.2d at 1268; *see Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157, 1165 (5th Cir. 1982) (a § 455(a) movant "must show that if a reasonable man knew of all the circumstances, he would harbor doubts about the judge's impartiality").[37]

---

[36]As Judge Callister explained in *Idaho v. Freeman*, "it appears appropriate for the judge to evaluate all the facts and circumstances surrounding the alleged appearance of impartiality and determine if a reasonable, uninvolved observer would question the judge's impartiality." 507 F. Supp. at 721 (footnotes omitted).

[37]The Reporter for the ABA Committee that drafted the Code of Judicial Conduct (from which the standard of subsection 455(a) is taken verbatim) explained the standard as follows:

> Any conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge's "impartiality might reasonably be questioned" is a basis for the judge's disqualification.

(continued...)

As to actual "personal bias or prejudice concerning a party" under § 455(b)(1), the Blakelys' motion fails for essentially the same substantive factual deficiencies pointed out under § 144: the court's prior orders do not "display a deep-seated favoritism or antagonism that would make fair judgment impossible," *Liteky*, 510 U.S. at 555; the Blakelys' conclusions, beliefs and opinions concerning this court's prior orders cannot suffice to prove actual personal bias by compelling evidence; and the record contains *no* other evidence of actual personal bias, animus or malice on the part of the court.

Concerning whether the court's "impartiality might reasonably be questioned" under § 455(a) solely in light of the content of this court's prior orders, the *Liteky* standard governs here as well: "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." 510 U.S. at 555.

Considered in light of all of the circumstances surrounding the issuance of this court's prior orders granting summary judgment on the Blakelys' claim for breach of the implied covenant of good faith and fair dealing, the Blakelys' complaints concerning the court's explanation of its rulings fall far short of satisfying the *Liteky* standard.

Plaintiffs' counsel asserts that this court's August 7, 2009 Order "makes many references to documents and facts that favor USAA and unfairly ignores the facts Mr. and Mrs. Blakely presented in their declaration in opposition to defendant's motion for summary judge [sic] and in

---

[37](...continued)
E. Wayne Thode, *Reporter's Notes to Code of Judicial Conduct* 100 (1973).

other evidence submitted by Plaintiffs,"[38] and that the court's December 6, 2011 Memorandum Opinion & Order "basically gives the same summary of the facts as plaintiffs describe above as a one sided summary of uncontested facts without giving credence to the testimony in plaintiffs' Declarations and plaintiffs' evidence."[39]

This court's August 7, 2009 Order and December 6, 2011 Memorandum Opinion & Order do not make formal findings of fact.  "The court is not required to state findings or conclusions when ruling on a motion under Rule . . . 56," Fed. R. Civ. P. 52(a)(3), and Rule 56 suggests that "[t]he court should state on the record the reasons for granting or denying" a motion for summary judgment, but does not require it to do so.  Nor does Rule 56 require the court to provide an exhaustive recapitulation of the parties' respective factual assertions while stating those reasons.

As explained above, this court summarized in narrative form the sequence of events transpiring after the August 29, 2002 fire at the Blakelys' residence—a concise summary in the August 7, 2009 Order and a more detailed narrative in the December 6, 2011 memorandum opinion—accompanied in the latter instance by detailed references to the parties' summary judgment papers, particularly their respective DUCivR 56-1 statements of material fact.  The court's memorandum opinion did not rehearse the parties' more detailed factual narratives, but cited to those narratives with paragraph-by-paragraph, fact-by-fact specificity.

As noted above, the court's factual narrative acknowledged the Blakelys' abiding dissatisfaction with the extent of the floor joist restoration work performed by Phipps

---

[38](Blakely Mem. at 2.)

[39](*Id.*)

Construction and with the cleaning, repair and restoration of their home and its contents following the fire, and that the Blakelys remained dissatisfied following USAA's initial payment of $93,332.20 as of July of 2003.[40]  In doing so, the court cited to the four-page factual narrative set forth in ¶¶ 10-13 of the Blakelys' opposition memorandum that detailed the specific matters about which they complained,[41] and pointed out that the Blakelys' dissatisfaction was uncontroverted by USAA.

The court's detailed reference to all of the parties' summary judgment papers—and particularly those originally filed in 2008—belies the Blakelys' preferred inference that this court had "ignored" or "overlooked" or "refused to acknowledge" their factual assertions and the record evidentiary materials upon they had relied.[42]  This cannot now come as a surprise to

---

[40](Dec. 6, 2011 Mem. Op. at 6-7 ¶¶ 9, 11 & nn. 15, 17.)

[41](*Id.* at 6 n.15 (citing Plaintiffs' Memorandum in Opposition to USAA's Motion for Summary Judgment, filed May 16, 2011 (CM/ECF No. 147), at viii-xii ¶¶ 10-13.)

[42]Indeed, this court turned to the parties' 2008 statements of fact and exhibits in part because after the first remand, counsel for both parties fell far short of complying with Fed. R. Civ. P. 56 and DUCivR 56-1 in presenting their respective statements of material fact. (*See* Dec. 6, 2011 Mem. Op. at 30-34.)  As the court of appeals noted:

> The district court expressed understandable frustration with the parties' citations to the "record," which were really citations to almost everything but the record, including the district court's 2009 Order of Dismissal, the Tenth Circuit's opinion in the prior appeal, and the appellate record in the prior appeal. The district court nevertheless exercised its discretion under Federal Rule of Civil Procedure 56(c)(3) to consider materials not cited by the parties, including exhibits attached to the parties' prior motions.  So the parties' inadequate citations did not affect the outcome in the district court . . . .

Order and Judgment in *Blakely v. USAA Casualty Insurance Co.*, Case No. 11-4218, 2012 WL 5193208 (10th Cir., decided October 22, 2012) (unpublished disposition) ("*Blakely* Ord. & Jgmt.") at 6 n.3.

plaintiffs' counsel because this court explained this in significantly greater detail in the

December 6, 2011 Memorandum Opinion & Order:

> In deciding USAA's current motion for summary judgment, this court has exercised its discretion under Fed. R. Civ. P. 56(c)(3) to consider materials in the record not directly cited by the parties' memoranda, including the parties' prior memoranda supporting and opposing summary judgment filed in 2008, exhibits appended to and record materials cited by those memoranda, and the parties' stipulated list of exhibits as submitted by counsel at the Final Pretrial Conference. The court has examined the parties' respective Statements of Facts in some detail and has attempted to correlate those fact statements with each other, and with the materials in the record as contemplated by Fed. R. Civ. P. 56(c)(1)(A). Many of those fact statements were admitted, or at least not substantially controverted, in 2008, and many were admitted or not substantially disputed in the parties' current summary judgment memoranda. The absence of a genuine issue of material fact as to the Blakelys' claim also became  apparent from the record of this court's extended colloquy with counsel during the continuing Final Pretrial Conference. . . . That pretrial record informs this court's consideration of USAA's current motion.[43]

This court's memorandum opinion noted that "[e]ven fact statements flagged as "disputed" in the

memoranda proved to be substantially uncontroverted as to the facts themselves. Often what was

actually disputed was the meaning or significance of a specific fact statement with respect to the

parties' competing legal arguments,"[44] and concluded that

> [o]n the record now before this court, the undisputed material facts enumerated in this court's August 7th Order remain essentially uncontroverted today, though the narrative sequence of events now benefits from further elaboration, largely tracking the parties' own DUCivR 56- 1(b)-(c) statements of fact having such support as may be gleaned from the record as it exists.[45]

The Blakelys' allegation that this court gave a "one sided summary of uncontested facts

---

[43](Dec. 6, 2011 Mem. Op. at 34 (footnotes omitted).)

[44](*Id.* at 34 n.65.)

[45](*Id.* at 37.)

without giving credence to the testimony in plaintiffs' Declarations and plaintiffs' evidence,"[46] is

further belied by the fact that the court of appeals *affirmed* this court's conclusion as to the

absence of a genuine factual dispute as to the narrative sequence of events:

> Plaintiff argues the district court should not have granted summary
> judgment because the facts were "disputed." Appellant's Br. at 21.  But Plaintiff
> cannot point us to any material facts that are actually in dispute.  *We agree with*
> *the district court that the parties dispute merely the significance of the facts, not*
> *the facts themselves.*

*Blakely* Ord. & Jgmt. at 8 (emphasis added & footnote omitted).

As the Blakelys point out, the court of appeals commented that it was "troubled by the

district court's failure to discuss a number of these material facts"[47] in discussing USAA's "fairly

debatable" defense under Utah law, and that "[b]y limiting its analysis" of that defense "to the

amount of coverage, the district court overlooked a number of pertinent facts" relied on by

plaintiffs, "such as the adjuster's refusal to communicate and claim that he could not smell

smoke, even though we noted them in our opinion in the prior appeal."  *Id.* at 10.  Yet this court

*did* refer to those facts in the context of analyzing the Blakelys' "but for" theory as to USAA's

"bad faith":

> The Blakelys respond that "but for USAA's breach of its implied duties of
> reasonable investigation and payment in 2003-2004, the Blakelys would never
> have been forced into appraisal in 2005." (Blakely Mem. at 1.) The Blakelys argue
> that USAA's initial underpayment of their claim "forced the Blakelys to later go
> through the time and expense of an appraisal process that would have been

---

[46](Blakely Mem. at 5.)

[47]Plaintiffs' counsel recounts that the court of appeals "was *troubled* by Judge Jenkins'
refusal to acknowledge the facts that supported plaintiffs' claim even after the Tenth Circuit
Court had recited them in its first opinion," (Blakely Mem. at 7 (emphasis by counsel).)
   At no point in its October 22, 2012 Order and Judgment did the *Blakely* panel say that
this court *refused to acknowledge* anything.

-28-

unnecessary if USAA had met its obligations regarding evaluation and payment of the losses" pursuant to the implied covenant of good faith and fair dealing. (*Id.* at 6-7 (footnote omitted)). Shortly after the August 29, 2002 fire, USAA should have undertaken to investigate, evaluate and pay the entire $291,356.52 loss amount that the panel of appraisers ultimately found to be payable under the express terms of USAA's policy, without the Blakelys ever having to resort to the contractual appraisal remedy— as they could have in November of 2002, and as they finally did in January of 2005. Anything less was unreasonable, the Blakelys submit, and amounts to bad faith on the part of USAA—a breach of the implied covenant of good faith and fair dealing.

> *The Blakelys' dissatisfaction with the extent of the original structural repairs, particularly the limited replacement of charred floor joists pursuant to the Barfuss engineering report and Phipps' handling of cleaning and repair of walls, ceilings, etc., as well as the Blakelys' disagreement with the USAA adjuster's response to their views concerning smoke damage to many items of personal property*, (*see* Blakely Mem. at viii-xi ¶¶ 10-13; id. at 7), are thus subsumed under USAA's failure to pay nearly $300,000 at the outset of the claims adjustment process following the August 29, 2002 fire, without waiting for the Blakelys to resort to the appraisal remedy.[48]

Under Utah law as of 2011, "Whether an insured's claim is fairly debatable under a given set of facts is . . . a question of law," *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 464 (Utah 1996), and where an insured's claim was fairly debatable, the insurer's denial did not breach the implied covenant of good faith and fair dealing as a matter of law. *Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 36, 56 P.3d 524, 535. Thus, "[i]f an insurer acts reasonably in denying a claim, then the insurer did not contravene the covenant," *Id.* at ¶ 28, 56 P.3d at 534 (citing 14 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 207:53 (1999)), and Under Utah law, a reasonable insurer may decline payment of a fairly debatable claim until the dispute is resolved, *e.g.*, through civil litigation or the appraisal process. *Billings*, 918 P.2d at 466-67; *see*

---

[48](Dec. 6, 2011 Mem. Op. at 20 (emphasis added & footnote omitted).) *See also Blakely*, 633 F.3d at 948 n.1 ("The Blakelys argue that they would not have had to invoke the appraisal demand clause had USAA acted reasonably in assessing and paying their claim.").

*Machan v. UNUM Life Ins. Co. of America*, 2005 UT 37, ¶¶ 18, 20, 116 P.3d at 346, 347.

While the implied covenant of good faith and fair dealing expects that "the insurer will

diligently investigate the facts to enable it to determine whether a claim is valid, will fairly

evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the

claim," *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 801 (Utah 1985), USAA's affirmative "fairly

debatable" defense under Utah law then extant appeared to turn on the circumstances

surrounding the insurer's *denial* of the insured's claim for a particular amount.

This court's analysis of USAA's "fairly debatable" defense became largely academic

when the Utah Supreme Court decided *Jones v. Farmers Ins. Exch.*, 2012 UT 52, 286 P.3d 301.

As the court of appeals explains:

> Oddly enough, the question of "[w]hether an insured's claim is fairly debatable
> under a given set of facts is . . . [a] question of law," rather than of fact. *Billings*,
> 918 P.2d at 464. This is so, despite the fact that the "analysis of whether an
> insurance claim is fairly debatable is closely related to an analysis of whether an
> insurer fulfilled its duty under Beck to evaluate the claim fairly." *Jones v.
> Farmers Ins. Exchange*, --- P.3d ---, 2012 WL 3677052 at *4 (Utah 2012)
> (footnote omitted).  The Utah Supreme Court recently tried to reconcile these
> contradictory notions. It clarified that although the "fairly debatable" defense is a
> matter of law, it is not always appropriately decided on summary judgment. *Id.* at
> *1. Rather, "the fairly debatable defense should not be resolved through summary
> judgment if reasonable minds could differ as to whether the defendant's conduct
> measures up to the standard required for insurance claim investigations." *Id.* In
> such a case, the question of good faith should be presented to the jury. *Id.* at *5.
> Thus, the question before us is whether the undisputed facts demonstrate that
> "reasonable minds could differ" as to Defendant's compliance with *Beck*'s
> standard for good faith and fair dealing.

*Blakely* Ord. & Jgmt. at 8-9.  Considering this case in light of *Jones*, the court of appeals opined

that the Blakelys' factual allegations concerning USAA's initial investigation "suggest that

Defendant acted unreasonably apart from the question of whether Defendant reasonably denied

Plaintiffs' January 2005 demand," *id.* at 10—that is, apart from USAA's "fairly debatable"

defense.  "The district court in this case did not have the benefit of *Jones*, which was decided

while this case was on appeal.  But *Jones* is incompatible with the district court's reasoning."  *Id.*

at 12.  Hence the second remand of this case for further proceedings.

Both court and counsel have wrestled with the implications of the "fairly debatable"

defense during the course of this case, and both the Tenth Circuit and this court are bound to

follow the Utah Supreme Court's latest articulation of the Utah law theory of breach of the

implied covenant of good faith and fair dealing.[49]  But at no point in the ongoing reasoning

process outlined above did this court "display a deep-seated favoritism or antagonism that would

make fair judgment impossible."  *Liteky*, 510 U.S. at 555.  As borne out by the Blakelys' most

recent appeal, adverse judicial rulings "[a]lmost invariably . . . are proper grounds for appeal, not

for recusal."  *Id.*

---

[49]Examining the *Jones* opinion with some care, it appears that the Blakelys prevailed on *two* appeals this year: acting on behalf of another client, the Blakelys' counsel persuaded the Utah Supreme Court in *Jones* to "clarify" the "fairly debatable" defense in a fashion that may signal a significant retreat from the view that "[w]hether an insured's claim is fairly debatable under a given set of facts is . . . a question of law," *Billings*, 918 P.2d at 464, and from its status a complete affirmative defense warranting summary judgment.  *See Jones*, 2012 UT 52, at ¶ 1, 286 P.3d at 302 ("We clarify that the fairly-debatable defense should not be resolved through summary judgment if reasonable minds could differ as to whether the defendant's conduct measures up to the standard required for insurance claim investigations.").

As the *Blakely* panel points out, "Under Utah law, '[w]hether there has been a breach of good faith and fair dealing is a factual issue, generally inappropriate for decision as a matter of law.'" *Blakely v. USAA Casualty Insurance Co.*, Case No. 11-4218 (10th Cir., decided October 22, 2012) (unpublished disposition) at 8 (quoting *Oman v. Davis Sch. Dist.*, 194 P.3d 956, 968 (Utah 2008) (quoting *Republic Group, Inc. v. Won-Door Corp.*, 883 P.2d 285, 291 (Utah Ct. App. 1994))).  If compliance with the *Beck* standard is intrinsically a factual issue, then "reasonable minds could differ as to whether the defendant's conduct measures up to the standard" in essentially every case, precluding summary judgment even though the insured's claim may ultimately prove to have been "fairly debatable."

Plaintiffs' counsel argues that "[i]n both of his rulings, Judge Jenkins summarized the evidence in a one-sided way, stating that the evidence was uncontested. The lengthy declarations filed by the plaintiffs described a very different picture which Judge Jenkins seemed to ignore or found immaterial."[50]  Yet the court of appeals affirmed this court's determination that there exists no genuine issue of material fact as to the historical sequence of events upon which the Blakelys' "bad faith" claim is grounded, rejecting plaintiffs' counsel's arguments to the contrary.[51]

The parties know and do not genuinely dispute what happened following the August 29, 2002 fire at the Blakelys' home, and when it happened.  In effect, the facts to be proven by probative admissible evidence in this case are already part of the record,[52] and as the court of appeals points out, the question to be resolved by the trier of fact is *the legal significance of those facts* in light of the standard articulated in *Beck* and clarified in *Jones*.

"[A] reasonable person, knowing all the relevant facts" and circumstances surrounding this court's prior orders in this case, would not "harbor doubts about the judge's impartiality" as reflected by this record.  *United States v. Cooley*, 1 F.3d at 992; *Glass v. Pfeffer*, 849 F.2d at 1268.

---

[50](Blakely Mem. at 7.)  Counsel does not explain how the 2008 Blakely declarations paint a "very different picture" of the facts from the DUCivR 56-1 statements of fact referenced in this court's December 6, 2011 memorandum opinion, such as Plaintiffs' Memorandum in Opposition to USAA's Motion for Summary Judgment, filed May 16, 2011 (CM/ECF No. 147), at viii-xii ¶¶ 10-13.  (*See* Dec. 6, 2011 Mem. Op. at 6-7 & nn. 15, 17.)

[51]*Blakely* Ord. & Jgmt. at 8.  The court of appeals also rejected the argument of plaintiffs' counsel that this court had applied an inappropriate "directed verdict" standard.  *Id.* at 8 n.4 ("We find no evidence that the district court applied this erroneous rule of law.").

[52]Given the uncontroverted factual record in this case, there appears to be minimal risk that this court "will not rule in an unbiased way regarding various motions and objections that will likely arise during the trial process," as the Blakelys now allege.  (Blakely Mem. at 7.)

**CONCLUSION**

As the court has explained in some detail, whether the Blakelys were asserting actual personal bias under §§ 144 or 455(b)(1), or the appearance of bias under § 455(a), their allegations do not meet their substantial burden to establish a valid basis for judicial disqualification or recusal under either statute.  There is no indication on this record that this court had formed an opinion on the merits of the Blakelys' claim on some basis other than what was learned from participation in this case.  Nor do this court's prior orders "display a deep-seated favoritism or antagonism that would make fair judgment impossible," as *Liteky* requires.

The court of appeals has often reminded us that recusal is not to be taken lightly, and that "a judge . . . has 'as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require.'"[53] Here, the Blakelys' unsubstantiated suggestions, speculations, and conclusory opinions prove insufficient to establish even the appearance of any bias, prejudice, or misconduct on the part of this court that would warrant judicial recusal.[54]

The Blakelys are plainly frustrated and dismayed that to date they have not obtained a judgment against USAA on their "bad faith" claim, and that their side of the story of the August

---

[53]*Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 659 (10th Cir. 2002) (quoting *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995)) *see also Carpenter v. Boeing Co.*, 456 F.3d 1183, 1204 (10th Cir. 2006) (same).  Indeed, "The recusal statute should not be construed so broadly as to become presumptive or to require recusal based on unsubstantiated suggestions of personal bias or prejudice."  *Id.* at 659-60 (citing *Switzer v. Berry*, 198 F.3d 1255, 1258 (10th Cir. 2000)); *see also United States v. Cooley*, 1 F.3d at 993 ("The statute is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice.").

[54]*See Hinman v. Rogers*, 831 F.2d at 939 ("A judge should not recuse himself on unsupported, irrational, or highly tenuous speculation.").

29, 2002 fire has yet to prevail on the merits before this court.[55]  But as the court of appeals points out, the legal winds shifted in *Jones*, and the Blakelys' day to present their claim to a jury draws near.  The outcome will then be for the jury to decide.

For the reasons explained above,

**IT IS ORDERED** that Plaintiffs' Motion to Have Judge Recuse Himself and Have Another Judge Assigned, filed November 2, 2012 (CM/ECF No. 161) is DENIED.

**IT IS FURTHER ORDERED** that the above-captioned proceeding is hereby calendared for a Status and Scheduling Conference on **January 18, 2013 at 1:30 p.m.**

DATED this *10th* day of December, 2012.

BY THE COURT:

Bruce S. Jenkins
United States Senior District Judge

---

[55]*Green v. Dorrell*, 969 F.2d at 919 ( "[A]dverse rulings against a litigant cannot in themselves form the appropriate grounds for disqualification.").

-34-